|  |  |  |
|---|---|---|
| | ) | **UNITED STATES DISTRICT COURT** |
| | ) | **FOR THE DISTRICT OF COLORADO** |
| | ) | |
| AMERICA 2030 CAPITAL LIMITED | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SUNPOWER GROUP LIMITED | ) | CASE NUMBER: 1:19-cv-01037 |
| GE CUI XIN | ) | |
| CHEN KAI | ) | |
| JIANG NING | ) | |
| LAU PING SUM (AKA "PEARCE") | ) | |
| THE EDGE MEDIA GROUP PTE LTD | ) | |
| ONG KOOI TONG | ) | |
| PC LEE | ) | |
| MICHELLE ZHU | ) | |
| DCP CAPITAL PARTNERS | ) | |
| DAVID LU | ) | |
| CDH INVESTMENTS | ) | |
| HUANG YAN | ) | |
| LI GANG | ) | |
| YING WEI | ) | |
| SONG XIAOMING | ) | |
| HU NING | ) | |
| GUO LI | ) | VERIFIED COMPLAINT |
| WILLIAM HSU | ) | |
|     Defendant(s) | ) | |

**COMES NOW, the Plaintiffs AMERICA 2030 CAPITAL LIMITED (hereinafter known as "Plaintiffs")** by and through the undersigned attorney, files this First Verified Complaint for tortious damages caused by Sunpower Group Limited and their officers and board members (hereinafter known as "Defendants") due the Defendants' malicious acts of Defamation per se, Slander per se, Libel per se, Intentional Infliction of Emotional Distress, False Light, Spoliation of Evidence, Retaliation, Deprivation of Rights to a Fair Trial, Deprivation of Liberty, Extrajudicial Punishment, Tortious Interference to Making a Living, Intent to Cause Harm, Unfair

Business Practice, Intentional Wickedness, and Moral Evil. Further, Plaintiffs claim damages for the negligent actions of the Defendants through Negligence, Negligent Infliction of Emotional Distress, and Recklessness.  In furtherance, the Plaintiffs hereby state as follows:

## I.     INTRODUCTION

1. This is an intentional tortious action and an action for negligence

2. Plaintiff invokes the Power of this Court's rights for the deprivation of Plaintiff's Due Process rights; deprivation of Plaintiff's right to redress grievances and access to court; deprivation of Plaintiff's right to property; and for the deprivation of Plaintiff's right to have a Trial by Jury, as afforded under the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution, and, as found in the Constitution of Colorado.

3. 3.   Plaintiff likewise seeks redress for violations by the Defendants as afforded Plaintiff under Title 15 U.S.C. §1692 et seq. and state applicable consumer laws to be included in Plaintiff's Complaint proving that this case is brought about through the illegal actions on part of the Defendants.

4. Plaintiff also invokes this Court's authority to order an adversarial hearing on the intentional and malicious acts to deny Plaintiff their procedural and substantive due process rights.

5. Plaintiff is seeking actual damages, treble damages, statutory and punitive damages, and award the financial damages suffered by Plaintiff for this District Court has ancillary jurisdiction to hear this case and rule on the relief requested, for their pain and suffering due to these acts by these named Defendants and yet unnamed Defendants.

6. Plaintiff seeks damages caused by the Defendants for acts of Defamation per se, Slander per se, Libel per se, Intentional Infliction of Emotional Distress, False Light, Spoliation of Evidence, Retaliation, Deprivation of Rights to a Fair Trial, Deprivation of Liberty, Extra

Judicious Punishment, Intent to Cause Harm, Unfair Business Practice, Intentional Wickedness, and Moral Evil. Further, Plaintiffs seeks damages for the negligent actions of the Defendants through Negligence, Negligent Infliction of Emotional Distress, and Recklessness.

7.  The rapacious Defendants, intentionally, wantonly, deliberately, maliciously, fallaciously and willfully conspired in a well-orchestrated scheme to illegally defame and harm the reputation of Plaintiffs.

8.  Plaintiff lastly invokes this Courts authority under Title 15 U.S.C. § 1692(e)(k).

9.  This Court must therefore provide the requested relief based upon numerous Court decisions.

## II.   JURISDICTION AND VENUE

10. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

11. Plaintiff AMERICA 2030 CAPITAL LIMITED is a Corporation in good standing formed in Colorado whose Registered Agent is located in Colorado Springs, El Paso County, State of Colorado.

12. Plaintiff AMERICA 2030 CAPITAL LLC. is a Corporation in good standing formed in Colorado whose Registered Agent is located in Colorado Springs, El Paso County, State of Colorado.

13. SUNPOWER GROUP LIMITED is a publicly traded company in Singapore with a principle place of business listed as Nanjing Jiangning Science Park No.2111 Chengxin Road Nanjing, 211112 China.

14. Defendant GE CUI XIN's domicile is China.

15. Defendant CHEN KAI's domicile is China.

16. Defendant JIANG NING's domicile is China.

17. Defendant LAU PING SUM (AKA "PEARCE")'s domicile is China.

18. Defendant THE EDGE MEDIA GROUP PTE LTD is a media company in Singapore with a principle place of business listed as 150 Cecil Street #13-00, Singapore 069543.

19. Defendant ONG KOOI TONG's domicile is Singapore.

20. Defendant PC LEE's domicile is Singapore.

21. Defendant MICHELLE ZHU's domicile is Singapore.

22. Defendant DCP INVESTMENTS is a private equity firm with a principle place of business listed as, Unit 1425, 14th Floor, China World Office 1,1 Jianguomenwai Avenue, Chaoyang District, Beijing, 100004, China.

23. Defendant DAVID LU's domicile is China.

24. Defendant CDH INVESTMENTS is a publicly traded entity with a principle place of business listed as One Temasek Avenue, #18-02, Millenia Tower, Singapore.

25. Defendant HUANG YAN's domicile is Singapore.

26. Defendant LI GANG's domicile is Singapore.

27. Defendant YING WEI's domicile is Singapore.

28. Defendant SONG XIAOMING's domicile is Singapore.

29. Defendant HU NING's domicile is Singapore.

30. Defendant GUO LI's domicile is Singapore.

31. Defendant WILLIAM HSU's domicile Singapore.

32. This action arises under the United States Constitution, particularly, for violations of Plaintiffs' rights under the First, Fifth, Seventh and Fourteenth amendments; and, under Federal Law, as enumerated under 28 U.S.C. §§2201, and 2202.

33. This Court has original jurisdiction over Plaintiff's claim by operation of 28 U.S.C. §§1331 and, supplemental jurisdiction over Plaintiff's state Claims, pursuant to 28 U.S.C. §1367.

34. This Court is vested with authority to issue the requested Declaratory Relief, pursuant to 28 U.S.C. §2201 and, as further under Rule 57, of the Federal Rules of Civil Procedure.

35. This Court has the authority to issue relief from a Judgment under Federal Rules of Civil procedure 60(d)(1) and (3) "independent action" and pursuant to 28 U.S.C. §§2201 and 2202.

36. This Court has the authority to award the requested Injunctive Relief, under Rule 65 of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. §§2202.

37. This Court has the authority to award Plaintiffs, damages arising under violations of Title 15 U.S.C. §1692 §1692k(d).  The jurisdiction of this Court is not disputed.

38. Plaintiffs aver venue is proper under 28 U.S.C. §1391 as the claims set forth in this complaint arose here.

39. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

### III.   PARTIES

40. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

41. Plaintiffs and at all times material and relevant hereto, is a Corporation in good standing formed in Colorado whose Registered Agent is located in Colorado Springs, El Paso County, State of Colorado. Plaintiffs are general purpose corporations and therefore do not have any higher duty or knowledge, other than that which a general-purpose corporation would have.

42. Plaintiffs are part of a global consortium of mergers and acquisitions companies, in which one specialty includes securities lending.

43. Defendant Sunpower Group Limited is a public company, publicly traded company, publicly held company, publicly listed company, or public limited company is a corporation whose ownership is dispersed among the general public in many shares of stock which are freely traded on a stock exchange or in over the counter markets. In some jurisdictions, public companies over a certain size must be listed on an exchange. Defendant Sunpower Group Limited is publicly traded in Singapore.

44. Directors and Officers have a Duty of Care and a Duty of Loyalty to the public shareholders. The Duty of Care essentially requires that directors and/or officers make business decisions based on all material information available to them, holding them to the standard of care in managing the corporation's business that ordinarily careful and prudent people would use in similar circumstances in handling their own affairs. Courts, however, have traditionally afforded directors and officers broad discretion by applying the business judgment rule, which presumes that, in making a business decision, the directors of a corporation acted in an informed basis in good faith and in the honest belief that the action taken was in the corporation's best interests. Consequently, courts do not second-guess business decisions when the decision is made by an independent (hence presumptively unbiased) and fully informed board in good faith. Usually, gross negligence will lead to a finding that the Duty of Care was breached. The Duty of Loyalty is breached when an officer or director acts in his self-interest to the detriment of the corporation or its stockholders, such as using the corporation in order to harm outside entities or people for their own personal gain and to advance personal interest, contrary to the interest of the public. Laws provides that whenever a corporate officer or director is presented with a business opportunity which falls within the type of business which would be advantageous to the corporation and which the corporation is able to undertake

financially, the officer or director, as the case may be, may not take the opportunity individually. Conversely, an opportunity that is not desirable or essential for the corporation may be appropriated individually by the director or officer.

45. The directors (and, to a lesser extent, the officers) of a publicly corporation are subject to claims under law for breach of fiduciary duty for not properly exercising their duty of care and/or loyalty.

46. Defendant GE CUI PING is an Officer of Defendant SUNPOWER GROUP LIMITED.

47. Defendant CHEN KAI is an Officer of Defendant SUNPOWER GROUP LIMITED.

48. Defendant JIANG NING is a Director of Defendant SUNPOWER GROUP LIMITED.

49. Defendant LAU PING SUM "PEARCE" is a Director of Defendant SUNPOWER GROUP LIMITED.

50. Defendant THE EDGE MEDIA GROUP PTE LTD published the defamatory articles against Plaintiffs.

51. Defendant ONG KOOI TONG is the Chairman of THE EDGE MEDIA GROUP PTE LTD.

52. Defendant PC LEE is an author at THE EDGE MEDIA GROUP PTE LTD.

53. Defendant MICHELLE ZHU is an author at THE EDGE MEDIA GROUP PTE LTD.

54. Defendant DCP CAPITAL PARTNERS is a large bond holder of Defendant SUNPOWER GROUP LIMITED.

55. Defendant DAVID LU is the Founder and CEO of Defendant DCP CAPITAL PARTNERS.

56. Defendant CDH INVESTMENTS is a large bond holder of Defendant SUNPOWER GROUP LIMITED.

57. Defendant HUANG YAN is a Managing Partner at Defendant CDH INVESTMENTS.

58. Defendant LI GANG is the CEO of Defendant CDH INVESTMENTS.

59. Defendant YING WEI is a Managing Director at Defendant CDH INVESTMENTS.

60. Defendant SONG XIAOMING is a Managing Director at Defendant CDH INVESTMENTS.

61. Defendant HU NING is a Managing Director at Defendant CDH INVESTMENTS.

62. Defendant GUO LI is the CFO of Defendant CDH INVESTMENTS.

63. Defendant WILLIAM HSU is a Managing Director at Defendant CDH INVESTMENTS.

64. At all times material and relevant hereto, Defendants have advanced and willfully, deliberately, with malicious intent participated in a well-organized plan to defame and harm, Plaintiffs reputation.

## IV.    FACTS COMMON TO ALL COUNTS

65. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

66. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

67. On or about June 12, 2018 Plaintiffs through the consortium and Tournan Trading PTE LTD entered into a Master Loan Agreement, Power of Attorney, and a Custodian Management Agreement with regards to shares owned in Defendant SUNPOWER GROUP LIMITED, copies of which are attached as Exhibit A.

68. On or about June 12, 2018 Plaintiffs through the consortium and Sunpower Business Group PTE LTD entered into a Master Loan Agreement, Power of Attorney, and a Custodian Management Agreement with regards to shares owned in Defendant SUNPOWER GROUP LIMITED, copies of which are attached as Exhibit B.

69. Defendant GUO HONG XIN is the Director of Sunpower Business Group PTE LTD.

70. The Master Loan Agreements, Powers of Attorney, and a Custodian Management Agreements as mentioned above and attached hereto as Exhibit A and Exhibit B; call for the forfeiture of any shares held by Plaintiffs in the event of default of the Master Loan Agreement.

71. Further, the Master Loan Agreements, Powers of Attorney, and a Custodian Management Agreements as mentioned above and attached hereto as Exhibit A and Exhibit B; state that any dispute amongst the parties must be arbitrated before an arbitration panel in St. Kitts and Nevis.

72. On or about November 9, 2018, Tournan Trading PTE LTD and Sunpower Business Group PTE LTD were sent formal notices of forfeiture due to default under the Master Loan Agreements, Powers of Attorney, and a Custodian Management Agreements, copies of which are attached as Exhibit C.

73. Tournan Trading PTE LTD and Sunpower Business Group PTE LTD failed to remedy the default under the Master Loan Agreement, therefore Plaintiffs initiated arbitration actions against Tournan Trading PTE LTD and Sunpower Business Group PTE LTD as per the Master Loan Agreement on or about November 27, 2018, copies of which are attached as Exhibit D.

74. On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font "**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**" a copy of which is attached as Exhibit E.

75. On or about November 20, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states "The Group is not in breach of any

of the Group's loan provisions in view of the unauthorised transfers of shares in relation to the America 2030 Loan Agreement," a copy of which is attached as Exhibit F.

76. On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news publication published the following headline in bold font "**Sunpower says illegal transfer out of 28 mil shares reason for trading halt,**" a copy of which is attached as Exhibit G.

77. On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "**Sunpower executives involved in illegal transfer of shares lodge report with CAD.**" The article further states "Sunpower Group's executive chairman Guo Hongxing and executive director Ma Ming have approached and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the ***illegal transfer*** of 28 million shares in the group," a copy of which is attached as Exhibit H.

## V.     <u>FIRST CLAIM FOR RELIEF</u>

### <u>TRADE LIBEL</u>

78. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

79. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

80. Trade libel is a type of defamation that is specific to businesses. The elements of a trade libel case are very similar to the elements of general defamation, but there are some differences. The elements of a trade libel case are as follows:

    a.  A defendant made a false statement about the quality of the plaintiff's products or services;

    b.  The statement was published; and

    c.  The plaintiff suffered monetary loss or harm as a result of the statement.

81. It's important to break down the elements a little further to understand exactly what constitutes trade libel. First of all, the statement in question must be false. If the statement is true, that provides an absolute defense to the trade libel case. In addition, the statement must be a statement of fact, not simply an opinion. The definition of published is the same as a general defamation claim -- it simply has to be communicated to a third party. Finally, the plaintiff must show that his or her business suffered monetary harm as a result of the defendant's statement.

82. By using injurious language such as "Illegal" and "Unauthorized," Defendants are purposefully attempting to harm Plaintiffs business as vindication and retaliation for the defaults on Tournan Trading PTE LTD and Sunpower Business Group PTE LTD. No court of law or authority has deemed any transaction between Defendants, Tournan Trading PTE LTD and Sunpower Business Group PTE LTD to be "Illegal" or "Unauthorized."

83. It is true that at common law, "[a] [person] is conditionally privileged to make an unduly favorable comparison of the quality of his own land, chattels or other things, with the quality of the competing land, chattels or other things of a rival competitor, although he does not believe that his own things are superior to those of the rival competitor." Restatement (Second)

of Torts § 649 (1977). However, the conditional privilege does not extend to false assertions

of fact. See id. The Restatement explains:

> *So long as nothing more is done than to exaggerate dishonestly the merits of the publisher's goods as compared with those of his competitor the publisher is not liable. If, however, he goes further and makes a direct attack upon the quality of his competitor's things by stating specific unfavorable facts even though he does so to supply a reason for his claim that his own things are superior, he cannot successfully claim a privilege....*

## VI.   <u>SECOND CLAIM FOR RELIEF</u>

### <u>BUSINESS DISPARAGEMENT</u>

84. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified

   Complaint as if they were printed verbatim herein below.

85. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master

   Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for

   the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower

   Business Group PTE LTD, copies of which are attached as Exhibits A and B.

86. Business disparagement is the publication of derogatory and false statements and information

   about a person's title to his or her property, his or her business in general, or anything else

   made with the purpose of discouraging people from dealing with such individual or business.

87. Business disparagement laws and claims exist to allow for fair competition amongst businesses

   in a capitalistic and progressive economy. The tort of business disparagement not only includes

   false statements about one's business, but also false statements about the products or services

   of that business – more aptly named product disparagement.

88. There are four core elements at the heart of every business disparagement claim, all of which

   must be met in order to pursue a successful claim. The elements include; (1) the statement is

   false, (2) the defendant either intends the publication to cause financial loss or reasonably

believes that the publication would result in financial loss for the business, (3) financial loss does in fact result, and (4) the publisher acts with malice.

89. (1) In the foregoing case, Defendants published a false statement, as illustrated above, which used words such as "Illegal" and "Unauthorized."

90. (2) Defendants intentionally and recklessly published such statements in order to cause financial harm to the Plaintiffs.

91. (3) Plaintiffs have lost in excess of $100,000,000.00 USD in business due to the false statements by Defendants.

92. (4) The publisher intentionally committed famacide and used mediums in order to get the message across to assassinate Plaintiffs' character as a business.

93. The tort of business disparagement is broad, and the tort covers accusations that the business is incompetent, dishonest, or unethical.

## VII.   THIRD CLAIM FOR RELIEF

## DEFAMATION & SLANDER

94. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

95. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

96. Defamation is a cause of action for written or spoken communications that cause a party to suffer damage to their reputation or have a tendency to cause such damage. Defamation is commonly known as slander in the event of a defamatory statement that is spoken, and libel

when the defamatory statement is written or otherwise recorded. Slander and libel are treated similarly for purposes of this lawsuit.

97. Whether the harmful statement was written or spoken, a plaintiff must prove that a defamatory statement was made, that the statement was published to a third party, that the person publishing the statement was negligent as to its truth or knew that the statement was false, and damages resulting from the defamatory statement.

98. In order for a statement to be defamatory, it should tend to harm one's reputation. That can mean that it makes others think less of party about whom the statement is made or deters others from wanting to deal with that person or tends to lower that person's standing in the community. For a statement to be defamatory, it must assert a fact; it cannot be merely an opinion, and the statement must be understood by a reasonable person to be an assertion of fact.

99. The requirement that the defamatory statement be published to a third party means that the statement must be spoken to someone other than the person about whom the statement is made or must be written and delivered to some other than the person about whom the statement is made. This requirement is easily met where the defamatory statement is published in a newspaper, broadcast on television or the internet, or spoken to an audience. This requirement of publication to a third party cannot be circumvented by the person about whom the statement is made relaying the defamatory statement to a third party.

100.   Private parties bringing a defamation lawsuit related to a private matter must prove that person making the defamatory statement was negligent as to the truth or falsehood of the statement. Negligence is the failure to exercise reasonable care in making that determination.

The person making the defamatory statement does not need to know that the statement is actually false.

101.    In making that determination, the court must assess the plain and ordinary meanings of the words considered in the context of the publication as a whole, and in so doing may properly rely on lay dictionary definitions. See *Fry v. Lee*, 2013 COA 100, cert. denied (2014).

102.    On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font "**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**" a copy of which is attached as Exhibit E.

103.    On or about November 20, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states "The Group is not in breach of any of the Group's loan provisions in view of the unauthorised transfers of shares in relation to the America 2030 Loan Agreement," a copy of which is attached as Exhibit F.

104.    On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news publication published the following headline in bold font "**Sunpower says illegal transfer out of 28 mil shares reason for trading halt,**" a copy of which is attached as Exhibit G.

105.    On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "**Sunpower executives involved in illegal transfer of shares lodge report with CAD.**" The article further states "Sunpower Group's executive chairman Guo Hongxing and executive director Ma Ming have approached

and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the illegal transfer of 28 million shares in the group," a copy of which is attached as Exhibit H.

## IIX.   FOURTH CLAIM FOR RELIEF

## LANHAM ACT

106.   Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

107.   Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

108.   The Lanham (Trademark) Act (Pub.L. 79–489, 60 Stat. 427, enacted July 5, 1946, codified at 15 U.S.C. § 1051 et seq. (15 U.S.C. ch. 22)) is the primary federal trademark statute of law in the United States. The Act prohibits a number of activities, including trademark infringement, trademark dilution, and false advertising.

109.   §§ 42 and 43 of the Act (now known as 15 U.S.C. §§ 1124–1125) set out the remedies that can be sought when a trademark is infringed. These provisions forbid the importation of goods that infringe registered trademarks, and restrict, through the use of injunctions and damages, the use of false descriptions and trademark dilution.

110.   Defendants as public and media companies are held to a higher standard; however, they deceived the world with unfair statements that have irreparably harmed the Plaintiffs' reputations.

111.   Defendants are in the normal course of issuing press releases and articles that are deemed newsworthy.

112.   Defendants falsely printed articles and press releases regarding Plaintiffs.

113.   Plaintiffs in this case are considered consumers of the media.

114.   Plaintiffs suffered injuries in the form of monetary damages and loss of future income to the tune of over $100,000,000.00 USD.

115.   The practice has caused irreparable injury to Plaintiffs.

116.   On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font "**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**" a copy of which is attached as Exhibit E.

117.   On or about November 20, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states "The Group is not in breach of any of the Group's loan provisions in view of the unauthorised transfers of shares in relation to the America 2030 Loan Agreement," a copy of which is attached as Exhibit F.

118.   On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news publication published the following headline in bold font "**Sunpower says illegal transfer out of 28 mil shares reason for trading halt,**" a copy of which is attached as Exhibit G.

119.   On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "**Sunpower executives involved**

**in illegal transfer of shares lodge report with CAD.**" The article further states "Sunpower Group's executive chairman Guo Hongxing and executive director Ma Ming have approached and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the illegal transfer of 28 million shares in the group," a copy of which is attached as Exhibit H.

## IX.    FIFTH CLAIM FOR RELIEF

## PRODUCT DISPARAGEMENT

120.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

121.    Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

122.    Product disparagement is the publication of derogatory and false statements and information about a product or service that a business provides with the purpose of discouraging people from dealing with such business.

123.    Product disparagement laws and claims exist to allow for fair competition amongst businesses in a capitalistic and progressive economy.

124.    There are four core elements at the heart of every product disparagement claim, all of which must be met in order to pursue a successful claim. The elements include; (1) the statement is false, (2) the defendant either intends the publication to cause financial loss or reasonably believes that the publication would result in financial loss for the business, (3) financial loss does in fact result, and (4) the publisher acts with malice.

125.    (1) In the foregoing case, Defendants published a false statement, as illustrated above, which used words such as "Illegal" and "Unauthorized."

126.    (2) Defendants intentionally and recklessly published such statements in order to cause financial harm to the Plaintiffs.

127.    (3) Plaintiffs have lost in excess of $100,000,000.00 USD in business due to the false statements by Defendants.

128.    (4) The Defendants intentionally committed famacide and used mediums in order to get the message across to assassinate Plaintiffs' character as a business.

## X.    SIXTH CLAIM FOR RELIEF

### SPOILIATION OF EVIDENCE

129.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

130.    Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

131.    Spoliation of evidence is the intentional, reckless, or negligent withholding, hiding, altering, fabricating, or destroying of evidence relevant to a legal proceeding.

132.    On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font "**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL**

**SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**"

a copy of which is attached as Exhibit E.

133.    The statement above illustrates that Defendants, when speaking with SGX, clearly misrepresented and altered/fabricated statements dealing the authorization of the shares to be transfers.

134.    Exhibits A and B clearly show that the transfer of shares were authorized by Sunpower Business Group PTE LTD & Tournan Trading PTE LTD.

## XI.    SEVENTH CLAIM FOR RELIEF

## RETALIATION

135.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

136.    Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

137.    Retaliation occurs when a party acts in response to a legal act by another party in an attempt to retaliate and act in revenge.

138.    Plaintiffs in this case through its legal right to do so, properly and justifiably defaulted Sunpower Business Group PTE LTD & Tournan Trading PTE LTD. In response to legal act, Sunpower Business Group PTE LTD & Tournan Trading PTE LTD used the Defendants in order to cause a specific harm to Plaintiffs.

## XII.   EIGTH CLAIM FOR RELIEF

## DEPRIVATION OF RIGHTS

139.   Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

140.   Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

141.   Plaintiff invokes the Power of this Court's rights for the deprivation of Plaintiff's Due Process rights; deprivation of Plaintiff's right to redress grievances and access to court; deprivation of Plaintiff's right to property; and for the deprivation of Plaintiff's right to have a Trial by Jury, as afforded under the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution, and, as found in the Constitution of Colorado.

142.   Under 42 U.S.C § 1983, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

143.   Under the Amendment V to the US Constitution, James Madison wrote in relevant part "No person shall be… deprived of life, liberty, or property, without due process of law."

144.     Defendants have committed an egregious act in order to purposely deprive the Plaintiffs rights to make a living, without just cause and accused Plaintiffs of "illegal" act, when no court of law has done so.

### XIII.   NINTH CLAIM FOR RELIEF

### DEPRAVATION OF LIBERTY

145.     Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

146.     Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

147.     Plaintiff invokes the Power of this Court's rights for the deprivation of Plaintiff's Due Process rights; deprivation of Plaintiff's right to redress grievances and access to court; deprivation of Plaintiff's right to property; and for the deprivation of Plaintiff's right to have a Trial by Jury, as afforded under the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution, and, as found in the Constitution of Colorado.

148.     Under 42 U.S.C § 1983, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or

omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

149.   Under the Amendment V to the US Constitution, James Madison wrote in relevant part "No person shall be... deprived of life, liberty, or property, without due process of law."

150.   Defendants have committed an egregious act in order to purposely deprive the Plaintiffs rights to liberty.

151.   Plaintiffs have the right to challenge the validity of the false statements written about them and not be accused of conducting "illegal" acts in a vigilante manner.

## XIV.   TENTH CLAIM FOR RELIEF

## EXTRAJUDICIAL PUNISHMENT

152.   Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

153.   Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

154.   Extrajudicial punishment is punishment for an alleged crime or offense carried out without legal process or supervision from a court or tribunal through a legal proceeding.

155.   Plaintiffs repeats and incorporates the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

156.   On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news

publication published the following headline in bold font "Sunpower says illegal transfer out of 28 mil shares reason for trading halt," a copy of which is attached as Exhibit G.

157. On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "Sunpower executives involved in illegal transfer of shares lodge report with CAD." The article further states "Sunpower Group's executive chairman Guo Hongxing and executive director Ma Ming have approached and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the illegal transfer of 28 million shares in the group," a copy of which is attached as Exhibit H.

158. Statements to SGX and the press about the legality of the transfer of the shares, is a clear attempt by Defendants to cause extrajudicial punishment in a vigilante manner.

## XV. ELEVENTH CLAIM FOR RELIEF

## MALICIOUS INTENT TO CAUSE HARM

159. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

160. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

161. Malicious intent refers to the intent, without just cause or reason, to commit a wrongful act that will result in harm to another. It is the intent to harm or do some evil purpose.

162. On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font

"**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**" a copy of which is attached as Exhibit E.

163.    On or about November 20, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states "The Group is not in breach of any of the Group's loan provisions in view of the unauthorised transfers of shares in relation to the America 2030 Loan Agreement," a copy of which is attached as Exhibit F.

164.    On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news publication published the following headline in bold font "**Sunpower says illegal transfer out of 28 mil shares reason for trading halt,**" a copy of which is attached as Exhibit G.

165.    On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "**Sunpower executives involved in illegal transfer of shares lodge report with CAD.**" The article further states "Sunpower Group's executive chairman Guo Hongxing and executive director Ma Ming have approached and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the illegal transfer of 28 million shares in the group," a copy of which is attached as Exhibit H.

166.    Such statements clearly show malice on part of the Defendants. The Defendants knew, should have known or should have expected to reasonably know that such statements would be malicious and would cause harm.

## XVI. TWELFTH CLAIM FOR RELIEF

## FEDERAL TRADE COMMISSION ACT § 5: UNFAIR OR DECEPTIVE ACTS OR PRACTICES

167. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

168. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

169. An act or practice is unfair where it:

   a. causes or is likely to cause substantial injury to consumers;

   b. cannot be reasonably avoided by consumers; and

   c. is not outweighed by countervailing benefits to consumers or to competition.

170. Public policy, as established by statute, regulation, or judicial decisions may be considered with all other evidence in determining whether an act or practice is unfair.

171. An act or practice is deceptive where:

   a. a representation, omission, or practice misleads or is likely to mislead the consumer;

   b. a consumer's interpretation of the representation, omission, or practice is considered reasonable under the circumstances; and

   c. the misleading representation, omission, or practice is material.

172. (1) Defendants as public and media companies are held to a higher standard; however, they deceived the world with unfair statements that have irreparably harmed the Plaintiffs' reputations.

173.    (2) Defendants are in the normal course of issuing press releases and articles that are deemed newsworthy.

174.    (3) Plaintiffs in this case are considered consumers of the media.

175.    (4) Plaintiffs suffered injuries in the form of monetary damages and loss of future income to the tune of over $100,000,000.00 USD.

176.    (5) The practice has caused irreparable injury to Plaintiffs.

177.    On or about November 8, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states in bold font "**UNAUTHORISED TRANSFERS OF SHARES IN RELATION TO THE LOAN AGREEMENT ENTERED INTO BETWEEN TWO SUBSTANTIAL SHAREHOLDERS OF THE COMPANY AND AMERICA 2030 CAPITAL LIMITED,**" a copy of which is attached as Exhibit E.

178.    On or about November 20, 2018, Defendants submitted a filing with the Singapore Securities Exchange (hereinafter known as "SGX"). This filing states "The Group is not in breach of any of the Group's loan provisions in view of the unauthorised transfers of shares in relation to the America 2030 Loan Agreement," a copy of which is attached as Exhibit F.

179.    On or about November 9, 2018, Defendants by and through the news publication "The Edge Singapore" told the press that there was an "illegal transfer" of shares. The news publication published the following headline in bold font "**Sunpower says illegal transfer out of 28 mil shares reason for trading halt,**" a copy of which is attached as Exhibit G.

180.    On or about December 5, 2018, Defendants by and through the news publication "The Edge Singapore" released the following headline in bold font "**Sunpower executives involved in illegal transfer of shares lodge report with CAD.**" The article further states "Sunpower

Group's executive chairman Guo Hongxing and executive director Ma Ming have approached and lodged a report with the Commercial Affairs Department (CAD) and issued a press release regarding their involvement with the illegal transfer of 28 million shares in the group," a copy of which is attached as Exhibit H.

181.    Defendants decided to attack Plaintiffs in media opposed to in arbitration by releasing false and untruthful statements. It is unfair for Defendants to conduct business or resolve disputes through the public media. The Plaintiffs did not have the means to properly defend themselves in the media.

## XVII.   THIRTEENTH CLAIM FOR RELIEF

## INTENTIONAL WICKEDNESS & MORAL EVIL

182.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

183.    Moral evil is the result of any morally negative event caused by the intentional action or inaction of an agent, such as a person. An example of a moral evil might be murder, or any other evil event for which someone can be held responsible or culpable.

184.    Defendants statements with regards to "illegal" or "unauthorized" transfer of shares by Plaintiffs was with malice and intent to cause serious and irreparable harm to Plaintiffs reputation and ability to make a living.

185.    These malicious statements show that Defendants have the propensity to act in wicked or morally evil way.

186.    Defendants acted in a spiteful way with no regard to the consequences of their actions. To accuse the Plaintiffs to the public at large of acting "illegally" is in fact morally evil and

wicked. The Defendants knew, should have known or should have reasonably be expected to know that Plaintiffs would suffer in their ability to conduct business.

## XVIII. FOURTEENTH CLAIM FOR RELIEF

## FALSE LIGHT

187.  Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

188.  Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

189.  In the alternative along with the Claims of Relief listed above dealing with defamation and its related causes of action, Plaintiffs allege False Light.

190.  In a false light claim, the plaintiff must prove the following elements; (1) the defendant published some information about the plaintiff, (2) the information must portray the plaintiff in a false or misleading light, (3) the information is highly offensive or embarrassing to a reasonable person of ordinary sensibilities, and (4) the defendant must have published the information with reckless disregard as to its offensiveness.

191.  (1) the Defendants published misleading information about Plaintiffs as attached hereto in Exhibits E, F, G, and H.

192.  (2) The misleading information published by Defendants portray that Plaintiffs have conducted an "illegal" or "unauthorized" act, when in fact, no legal authority has deemed any action by Plaintiffs in regard to the transaction with Sunpower Business Group PTE LTD & Tournan Trading PTE LTD.

193.    (3) The information is deemed to be highly offensive and embarrassing. Plaintiffs must on

daily basis field inquiries with regards to the validity of the statements in Exhibits E, F, G, and

H.

194.    (4) Defendants acted maliciously by publishing words and phrases such as "illegal" or

"unauthorized." Defendants have a duty to be truthful in their statements to the public.

## XIX.   FIFTEENTH CLAIM FOR RELIEF

### GROSS NEGLIGENCE

195.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified

Complaint as if they were printed verbatim herein below.

196.    Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding

Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that

allow for the transfer of shares under the agreements with Tournan Trading PTE LTD &

Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

197.    In the alternative along with the Claims of Relief listed above dealing with intentional acts

by Defendants, Plaintiffs allege Negligence.

198.    Gross Negligence is when an individual act unreasonable or does something that a

reasonable person would not do, thus resulting in an injury. The defendant willfully showed a

complete disregard for another person or entity.

199.    The elements for negligence include; (1) Duty, (2) Breach, (3) Causation, and (4) Damages.

*Lopez v. Trujillo*, 399 P.3d 750 (Ct. App. Div. 1 2016).

200.    (1) The Defendants had a legal responsibility to protect the Plaintiffs from harm due to the

fact that Defendants are considered media and publicly traded companies, therefore they have

a duty to ensure that the statements released by Defendants must be truthful.

201.    (2) Defendants broke their legal duty by acting negligently with regard to ensuring that the statements released by Defendants were in fact truthful. The statements are not truthful.

202.    (3) The Defendants' action or inaction has caused harm in excess of $100,000,000.00 USD to Plaintiffs and countless dollars in lost future revenue.

203.    (4) Damages are in excess of $100,000,000.00 USD to Plaintiffs and countless dollars in lost future revenue.

204.    In civil cases in Colorado, a plaintiff must prove his or her case by a "preponderance of the evidence." A case is proven by a preponderance of the evidence if the plaintiff shows that a fact is more probable than not to have existed or to be true. See *City of Littleton v. Industrial Claim Appeals Office*, 370 P.3d 157 (Sup. Ct. Colo. 2016).

205.    Colorado uses a modified comparative fault/negligence rule when figuring out how damages are awarded and adjusted. Adjustments are made based on how much the plaintiff was at fault for his or her own injuries, if at all. If a plaintiff is 20% at fault for his or her injuries, the damages awarded to him or her by a jury will be reduced by 20%. However, if a plaintiff is 50% or more at fault for his or her injuries, that plaintiff is not entitled to recover at all. The jury makes the decision about who was at fault and by what percentage. See CRS §13-21-111.

206.    Punitive damages must be granted, which Colorado deems is three (3) times the actual damages awarded. See *Ferrer v. Okbamicael*, 390 P.3d 836 (2017).

## XX.    SIXTEENTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

207.    Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

208. Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

209. Contractual relations are generally protected against harms from inducement of breach as well as any intended and improper interference that causes loss. See Harper, *supra* note 3, § 6.9 at 379 (citing *Restatement (Second)* § 766, 766A, and cmt. e.). A defendant can be held liable for intentionally and improperly causing a breach of contract. But the protection against improper interference in business relations is not limited to liability for inducing breach of contract. See *Restatement (Second)* at § 766, cmt. c ("inducing breach of contract is now regarded as but one instance, rather than the exclusive limit" of tort); Harper, *supra* note 3, § 6.8 at 377 ("The term *inducing breach of contract* is somewhat misleading as a description of the tort in question."). A defendant can be liable for the harm caused by intentionally interfering with a known contract if he "acted in pursuit of some purpose considered improper." See Dobbs et al., *Prosser and Keeton* on Torts, § 129 at 979 (5th ed., West Group, 1984).

210. Defendants through their intentional acts have caused multiple breaches of contract with Plaintiffs contractual relationships with parties outside of this action.

211. Defendants had actual knowledge of contractual relationships with Sunpower Business Group PTE LTD & Tournan Trading PTE LTD. and other parties not included in this action.

## XXI.   RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

212. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

213.   Plaintiffs maintain that at all times during these acts, Plaintiffs have a valid and binding Master Loan Agreement, Custodian Management Agreement, and Power of Attorney that allow for the transfer of shares under the agreements with Tournan Trading PTE LTD & Sunpower Business Group PTE LTD, copies of which are attached as Exhibits A and B.

214.   The Racketeer Influenced and Corrupt Organizations Act (hereinafter known as "RICO") is a United States federal law that provides for extended criminal penalties and a civil cause of action for acts performed as part of an ongoing criminal organization.

215.   RICO focuses specifically on racketeering and allows the leaders of a syndicate to be tried for the crimes they ordered others to do or assisted them in doing, closing a perceived loophole that allowed a person who instructed someone else to.

216.   Defendants collectively colluded in order to harm Plaintiffs.

217.   The meaning of racketeering activity is set out at 18 U.S.C. § 1961. As currently amended it includes; any act of bribery, counterfeiting, theft, embezzlement, fraud, dealing in obscene matter, obstruction of justice, slavery, racketeering, gambling, money laundering, commission of murder-for-hire, and many other offenses covered under the Federal criminal code (Title 18).

## XXII.  <u>JUDICIAL NOTICE</u>

218.   Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

219.   Section 5(a) of the *Federal Trade Commission Act* (FTC Act) (15 USC §45) prohibits "unfair or deceptive acts or practices in or affecting commerce." This prohibition applies to all persons engaged in commerce, including banks. The Board has affirmed its authority under section 8 of the Federal Deposit Insurance Act to take appropriate action when unfair or

deceptive acts or practices (UDAP) are discovered. On March 11, 2004, the Board and the Federal Deposit Insurance Corporation (FDIC) issued a joint statement (Joint Statement) regarding the agencies' responsibilities to enforce the prohibitions against unfair or deceptive trade practices as they apply to state-chartered banks. The Joint Statement contains a discussion of managing risks relating to UDAP and general guidance on measures that state-chartered banks can take to avoid engaging in such acts or practices, including best practices. The legal standards for unfairness and deception are independent of each other. Depend- ing on the facts, a practice may be unfair, deceptive, or both.

220.   *Fry v. Lee*, 2013 COA 100, cert. denied (2014) – The claimed false implication can be argued based on the definition of "false" contained in Instruction 22:13 or Instruction 22:16 on "substantial truth."

221.   *The Lanham Act* (also known as the Trademark Act of 1946) is the federal statute that governs trademarks, service marks, and unfair competition. It was passed by Congress on July 5, 1946 and signed into law by President Harry Truman. The Act took effect on July 5, 1947. The Lanham Act sets out procedures for federally registering trademarks, states when owners of trademarks may be entitled to federal judicial protection against infringement and establishes other guidelines and remedies for trademark owners.

222.   *Walter v. Hall,* 940 P.2d 991 (Colo.App.1996) - CHIEF JUSTICE MULLARKEY delivered the Opinion of the Court. "We granted certiorari to review the court of appeals' judgment in Walter v. Hall, 940 P.2d 991 (Colo.App. 1996), affirming the trial court's order awarding treble damages to the respondents, Patricia and Rueben Walter (the Walters), pursuant to section 6-1-113, 2 C.R.S. (1992). We address the question of whether the court of

appeals properly found that the Walters had standing to bring a claim under the Colorado Consumer Protection Act, sections 6-1-101 to -511, 2 C.R.S. (1998)."

223. *Rees v. Unleaded Software, Inc.*, 383 P.3d 20 (Colo. App. 2013) – Plaintiff, John Van Rees, Sr., contends that the trial court erred in dismissing his claims against defendant, Unleaded Software, Inc. As an apparent issue of first impression, we interpret the scope and applicability of Colorado's economic loss rule in the context of three agreements for the design and maintenance of a website. We hold that under the economic loss rule, no independent duty exists for tort claims of fraud, fraudulent concealment, constructive fraud, or negligent misrepresentation when the alleged misrepresentations and false statements are about the ability to perform contractual duties. We also affirm the trial court's dismissal of Van Rees's claims of negligence, violation of the Colorado Consumer Protection Act, and civil theft.

224. *Lopez v. Trujillo*, 399 P.3d 750 (Ct. App. Div. 1 2016) – Plaintiff Jose Antonio Lopez (Lopez) appeals a judgment in a premises liability action entered in favor of defendant Consuelo Baca (Baca) after the trial court granted Baca's motion for summary judgment. Lopez, who was shot in the head by another patron while attending a night club Baca owned, sued Baca for negligence, claiming Baca unreasonably failed to provide security guards to check customers for weapons before allowing them to enter the premises. The trial court concluded Baca did not owe a duty to provide security guards because the shooting in this case was unforeseeable as a matter of law. We affirm.

225. *City of Littleton v. Industrial Claim Appeals Office*, 370 P.3d 157 (Sup. Ct. Colo. 2016) – Radiation causes cancer; does being a firefighter also cause cancer? Causation is never that simple, as this 68 page opinion and dissent demonstrate. In this case, a firefighter gets brain cancer and claims it was related to his employment and the hazardous chemicals to which he

was exposed on the job. The central issue on appeal is what evidence the fire district must present to prove that being a firefighter did not cause the cancer? In a typical toxic tort case, the burden would be on the firefighter. But in Colorado there is a special statute that shifts the burden to the employer to prove that the employment could not have caused cancer, and that it did not cause cancer in this firefighter. The court found the employers' evidence did not meet that burden because it could not disprove the presumption that employment-related exposure to toxic substances was the source of the cancer.

226. *Ferrer v. Okbamicael*, 390 P.3d 836 (2017) - the Colorado Supreme Court held claims for negligent hiring, training, entrustment, or supervision must be dismissed where the employer admits vicarious liability because those claims are "redundant and wasteful." Id. at 26. The ruling will have broad implications for personal injury litigation in Colorado and will limit the scope of permissible corporate discovery.

227. RICO was enacted by section 901(a) of the **Organized Crime Control Act** of 1970 (Pub.L. 91–452, 84 Stat. 922, enacted October 15, 1970) and is codified at 18 U.S.C. ch. 96 as 18 U.S.C. §§ 1961–1968. G. Robert Blakey, an adviser to the United States Senate Government Operations Committee, drafted the law under the close supervision of the committee's chairman, Senator John Little McClellan. It was enacted as Title IX of the **Organized Crime Control Act of 1970** and signed into law by Richard M. Nixon. While its original use in the 1970s was to prosecute the Mafia as well as others who were actively engaged in organized crime, its later application has been more widespread.

## XXIII. **COMPARATIVE FAULT**

228. Plaintiffs repeat and incorporate the foregoing Paragraphs of this Civil Action Verified Complaint as if they were printed verbatim herein below.

229.    Colorado uses a modified comparative fault rule when figuring out how damages are awarded and adjusted. Adjustments are made based on how much the plaintiff was at fault for his or her own injuries, if at all. If a plaintiff is 20% at fault for his or her injuries, the damages awarded to him or her by a jury will be reduced by 20%. However, if a plaintiff is 50% or more at fault for his or her injuries, that plaintiff is not entitled to recover at all. The jury makes the decision about who was at fault and by what percentage. See CRS §13-21-111.

## XXIV. CONCLUSION

WHEREFORE, Plaintiffs by and through the undersigned attorney, hereby demands this court to invoke this Judge's Oath and Duty as envisioned by our Founding Fathers.  The illegal actions Defendants must stop, and the Defendants should be ordered to reimburse plaintiff for loss of property and lost revenue. Being that irrefutable evidence has been produced before this Court of operating with intentional actions thus violating this Plaintiffs' right to a fair and impartial trial and based upon this extrinsic evidence, Defendants must be held accountable. Defendants should be ordered to compensate Plaintiffs for general, compensatory, punitive damages, and for all further relief this Court deems just.


**JURY TRIAL DEMANDED**

New York, New York
April 8, 2019

Respectfully submitted,

_____

Jaitegh Singh, Esq. #48585
*Attorney for Plaintiffs*
Singh Law, P.A.
209 W. 39th Street
Suite 802
New York, NY 10018
917-768-4763
jt@mannysingh.com

## PLAINTIFF AMERICA 2030 CAPITAL LIMITED'S VERIFICATION

**I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.**

STATE OF _GEORGIA_

COUNTY OF _COBB_

The foregoing instrument was acknowledged before me on this _APRIL 2, 2019_ by

_VAL SKLAROV_ of AMERICA 2030 CAPITAL LTO a Colorado Corporation, on

behalf of the Corporation. He is personal known to me or has produces

_DRIVONS LICENSE_ as identification.

_____
NOTARY PUBLIC

_____
VAL SKLAROV